[25,28]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JAMES HEMPHILL,                      :
                                     :     Civil Action No. 05-1950 (FLW)
            Plaintiff,               :
                                     :
      v.                             :
                                     :
OCEAN COUNTY DEPARTMENT OF           :
CORRECTIONS et al.,                  :          **OPINION**
                                     :
            Defendant.               :
_____ :


**WOLFSON, District Judge**

Presently before the Court are two motions for Summary Judgment on the Complaint of

Plaintiff, pro se, James Hemphill ("Hemphill").  In his Complaint, Hemphill, a former inmate at

Ocean County Jail, alleged that the Ocean County Department of Corrections ("OCDOC") (1)

failed to protect him from physical violence when he was attacked by fellow inmates; and (2)

denied him medical treatment and proper medication following the attack violation of 42 U.S.C.

§ 1983.  Pl.'s Compl. at §§ 4 & 6.  At the close of discovery, Defendant OCDOC and Third Party

Defendant Prison Health Services, Inc. ("PHS") filed individual motions for Summary Judgment

pursuant to Fed. R. Civ. P. 56(c).  For the reasons set forth below, Defendants' motions are

granted.


## I. BACKGROUND

After being extradited from Scotland, Plaintiff was confined at the Ocean County Jail

from September 3, 2004 to April 11, 2005.  <u>See</u> Pl.'s Opp. Br. at 2, 16; Hemphill Dep. 68-70.

During his incarceration, Defendant OCDOC and the officers on duty at Ocean County Jail were

primarily responsible for Plaintiff's general care and well-being.  <u>See</u> <u>generally</u> Pl.'s Opp. Br.

Defendant PHS, a private provider of managed correctional healthcare for jails, prisons, and

juvenile facilities, administered medical care at Ocean County Jail pursuant to a contract with

Ocean County, New Jersey.  PHS Summary Judgment Brief ("PHS SJ Br.") at 5.

On the evening of January 12, 2005, Plaintiff's cell mate, Michael Arsenault

("Arsenault") was attacked by two inmates attempting to steal his commissary.  Hemphill Dep. at

80:14 - 81:11. After fending off the attack, Arsenault summoned two on-duty OCDOC officers

and requested that he be transferred to a different area of the prison for fear that the attackers

would return.  <u>Id.</u> 81:11-20.  Arsenault was transferred, however, when Plaintiff asked the

officers if he could also be moved in the interest of his own personal safety, his request was

denied.  <u>Id.</u> at 81:21 - 82: 2.  <u>Id.</u>  Immediately after Arsenault was removed from the cell, the two

inmates returned, assaulted and badly beat Plaintiff. <u>Id.</u> at 76:19-79:2; 88:2-13;  Pl.'s Opp. Br. at

8.  As a result of the attack, Plaintiff sustained injuries to the side of his head, left eye, right arm,

and suffered a chipped tooth.  Hemphill Dep. at 11:23 - 12:3; 12:15-18.  Moreover, Plaintiff

contends that the attack caused him to suffer permanent injuries including nightmares and a sore

right shoulder.  <u>Id.</u> 88:14 - 89:13.

Immediately following the assault, Plaintiff explained to Sgt. Thompson, the sergeant on

duty, that he had been attacked.  Pl's Opp. Br. at 9. Thompson instructed Plaintiff to go to the

jail's medical facility to have his injuries cared for.  <u>Id.</u>  Plaintiff walked to the medical unit

where a nurse assessed the extent of his injuries and administered ice and Motrin for his head

2

pain.  Hemphill Dep. 28:16 - 29:7.  After returning from the medical unit, Plaintiff was transferred to another dorm. Pl's Opp. Br. at 10.

Subsequently, Plaintiff received the following care from prison medical staff and from specialists outside the prison.  On January 13, 2005, the day following the incident, Plaintiff saw a prison doctor who prescribed him eye drops for his eye injury. Hemphill Dep. 29:8-14.  On January 18, Plaintiff was seen by a nurse in the medical unit because the redness in his eye had not abated.  Id. 29:15-24.   Two days later, on January 20, 2005, Plaintiff saw a prison doctor after complaining of blurry vision.  Id. 29:25- 30:4.  Thereafter, on January 22, 2005,  Plaintiff requested an appointment with an eye specialist for his injury, Pl.'s Opp. Br., Ex. E, and on February 2, 2005, Plaintiff saw David R. Grossman, M.D. ("Dr. Grossman"), an opthamologist at the Ocean Eye Institute in Toms River, NJ. Siegrest Cert, Ex. D (under seal); Hemphill Dep. 34:6-16.  Dr. Grossman diagnosed Plaintiff with a subconjunctival hemorrhage and prescribed steroidal eye drops to treat the injury.  Hemphill Dep. 34:6-23.  Dr. Grossman also requested that Plaintiff return for a follow-up appointment in one month; on March 9, 2005, Plaintiff returned to Dr. Grossman for his follow-up visit at which time Dr. Grossman again prescribed eye drops to treat Plaintiff's injuries.  Siegrest Cert, Ex. D (under seal); Hemphill Dep. 34:14-25.

On April 8, 2005, Plaintiff filed a Complaint against the OCDOC alleging violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983.  Specifically, Plaintiff alleged that the OCDOC (1) failed to protect him from physical violence and (2) that he was denied proper medical attention.  On February 24, 2006, the OCDOC filed a Third Party Complaint against PHS.  On March 15, 2006, PHS filed a Motion for Summary Judgment. On March 30, 2006, OCDOC filed a Motion for Summary Judgment. On May 31, 2006, Plaintiff filed a Motion for

3

Leave to File an Amended Complaint which was denied by the Honorable Judge John J. Hughes on June 21, 2006 explaining that "Plaintiff['s] waiting until the end of discovery after dispositive motions have been filed to seek to Amend the Complaint constitutes undue delay . . . ." Id. Nevertheless, on June 16, 2006, Plaintiff submitted an Amended Complaint and Opposition to Defendants' Summary Judgment Motions.[1]

## II. LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1946).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment.  Celotex, 477 U.S. at 330.  Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.

---

[1]Importantly, as noted above, because Judge Hughes denied Plaintiff's Motion for Leave to File an Amended Complaint, the only matters properly before this Court are the two issues set forth above.  However, the Court also notes that even if leave to file an Amended Complaint had been granted, the Plaintiff's Amended Complaint merely added additional factual allegations and did not assert any additional causes of action.  Thus, to the extent that these facts were added, the Court has considered them.  Moreover, the Court notes that Plaintiff did not timely appeal Judge Hughes' order.  Instead, on June 30, 2006, Plaintiff filed a Motion for Reconsideration of this Order.

56(e).  To do so, the non-moving party must "do more than simply show that there is some

metaphysical doubt as to material facts." <u>Matshushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475

U.S. 574, 586 (1986).

## III. DISCUSSION

<u>A. Plaintiff's § 1983 claim against OCDOC</u>

In the instant matter, Plaintiff contends that Defendant OCDOC violated his Eighth

Amendment guarantee to be free from cruel and unusual punishment.[2]  Specifically, Plaintiff

alleges that prison officials failed to protect him from an attack by fellow prisoners and that he

was denied proper medical attention following the attack.  Section 1983 provides in relevant part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any

State or Territory. . .subjects, or causes to be subjected, any citizen of the United States or other

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit

in equity, or other proper proceeding for redress..."  42 U.S.C. § 1983.  Section 1983 does not

create substantive rights, but "merely provides a remedy for deprivations of rights established

elsewhere in the Constitution or federal laws."  <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 505

_____

[2]Since Plaintiff is proceeding in this action <u>pro se</u>, the Court is obligated to construe his pleadings liberally.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Dluhos v. Strasberg</u>, 321 F.3d 365, 369 (3d Cir. 2004) ("[The Court will] apply the applicable law, irrespective of whether the <u>pro se</u> litigant has mentioned it by name.").  In the instant matter, Plaintiff asserts that his rights were violated because guards "failed to protect [him] from physical violence" and "deni[ed] [him] of medical attention and proper medication." Pl.'s Compl. at ¶ 4.  Consequently, this Court will construe such allegations as alleged violations of Plaintiff's Eighth Amendment rights and that he is pursuing a cause of actions for damages under 42 U.S.C. § 1983.

(3d Cir. 2003) (citing <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996)).  Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir.1994).

Moreover, local government units are not liable under § 1983 solely on a theory of respondeat superior.  <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of)<u>; Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d Cir.2003).  Thus, in order for a governmental entity to be liable for the violation of a constitutional right under § 1983, the plaintiff must identify a policy or custom of the entity that caused the constitutional violation. <u>Bd. of County Comm'rs of Bryan County, Okla. v. Brown</u>, 520 U.S. 397, 403 (199).  Indeed,  "a defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988) (citations omitted); <u>accord</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-96 (3d Cir.1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir.1995).

Initially, the Court notes that Plaintiff named OCDOC as a Defendant.  As discussed above, in order to state a claim for relief under section 1983 the alleged violation must be caused

by a person.  Because OCDOC is a county agency, it is not a "person" amenable to suit under §

1983.  <u>See</u> <u>McLeod v. Monmouth County Corr. Inst.</u>, 2006 WL 572346, at *4 (D.N.J. Mar. 8,

2006) ("Monmouth County Correctional Institution is not a 'person' amenable to suit under 42

U.S.C. § 1983."); <u>Marsden v. Federal B.O.P.</u>, 856 F.Supp. 832, 836 (S.D.N.Y. 1994) (county jail

not amenable to suit under § 1983); <u>Powell v. Cook County Jail</u>, 814 F.Supp. 757, 758 (N.D. Ill.

1993) (Cook County Jail not a "person" under § 1983); <u>McCoy v. Chesapeake Corr. Ctr.</u>, 788

F.Supp. 890, 893 (E.D. Va. 1992) (local jails are state entities and are not persons under § 1983);

<u>Vance v. County of Santa Clara</u>, 928 F.Supp. 993, 995 (N.D. Cal. 1996) ("persons" under § 1983

does not include municipal departments); <u>Fields v. D. C. Dep't of Corr.</u>, 789 F.Supp. 20, 22

(D.D.C. 1992) ("well established that agencies and departments within the District of Columbia

government are not suable as separate entities").  However, even if OCDOC could properly be

the subject of a section 1983 action, the OCDOC cannot be held liable on a theory of respondeat

superior.   In the instant matter, Plaintiff has not alleged the existence of, or OCDOC's

acquiescence in, a custom or policy that would violate a constitutional right.  Thus, Plaintiff

cannot sustain a claim against OCDOC.


B.  <u>Plaintiff's Failure to Protect Claim Against OCDOC Officers</u>

          In addition to his claims against the OCDOC, Plaintiff contends that officers on duty on

the night of the attack violated his Eighth Amendment rights by failing to protect him from

"physical violence." Compl. at ¶4.  Plaintiff alleges that after his cellmate was attacked, Plaintiff

requested that he be moved to a different area of the prison.  Based on the officers' refusal to

move him, Plaintiff argues that the officers knew of and disregarded a substantial risk of harm to

the Plaintiff.

It is well-established that "'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)).  In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. See Hudson v. McMillian, 503 U.S. 1 (1992). The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984). Accordingly, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (1994) (internal quotations omitted). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  Thus, to successfully state a claim for violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim. The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety. See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir.1996). In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety.  Id. at 837.

8

However,  "[a] pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir.1985). "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm. Farmer, 511 U.S. at 834.

Applying Farmer to the instant action, the first question is whether Plaintiff has alleged facts showing that he faced a substantial risk of assault due to the attack on his cellmate.  The second question is whether Plaintiff has alleged facts from which it could be inferred that defendants were aware of and disregarded that risk.  Here, Plaintiff alleges that because of the attack on his cellmate and Plaintiff's subsequent request to be moved, Defendant officers knew of a substantial risk of harm to the Plaintiff and disregarded this risk when they refused to move him.  The Court does not agree.  Plaintiff asserts no facts as to why he believed that an attack on his cellmate would have resulted in an attack on him or why the officers would think that he was at risk.  Indeed, Plaintiff has not alleged that the attackers made any threats to him before, during or after the attack on Arsenault.  Thus, while defendants may not have exercised due care in failing to prevent the assault, such negligence is insufficient to establish a violation of the Eighth Amendment. Davidson v. Cannon, 474 U.S. 344, 345-48 (1986).   In Davidson, for example, the Court held that there was no Eighth Amendment violation when prison officials failed to heed a

9

prisoner's notification of threats from another inmate and the inmate was subsequently assaulted.

 Id.  Similarly, in the instant matter, Plaintiff asked prison officials to be moved out of his cell

because he feared an attack by other prisoners.  Thus, as in Davidson, this is not sufficient to

establish a deprivation of constitutional rights.  Moreover, Plaintiff admits that prior to this

incident, he had never been attacked, Hemphill Dep. 84:8-10, and that prior to the attack on his

cellmate, Plaintiff had no reason to believe that either he or his cellmate would be the victim of

an attack.  Hemphill Dep. 79.  For these reasons, I find that Plaintiff has not alleged facts which

suggest that defendants were informed of a specific risk of harm to himself, Nami, 82 F.3d at 67-

68; Young, 960 F.2d at 362, or that "a substantial risk of inmate attacks was longstanding,

pervasive, well-documented" or otherwise obvious to them.  Farmer, 511 U.S. at 842; accord

Hamilton v. Leavy, 117 F .3d 742, 747-48 (3d Cir.1997); Ingalls v. Florio, 968 F.Supp. 193,

199-200 (D.N.J.1997).  Thus, Plaintiff has failed to state a failure-to-protect claim.


C. Plaintiff's Failure to Provide Medical Treatment Claim Against PHS and OCDOC officials

        In addition to his claim that OCDOC officers failed to protect him, Plaintiff contends that

prison officials denied him proper medical treatment following the attack by fellow inmates.

Specifically, Plaintiff contends that as a result of the attack, he sustained damage to his left eye

and was denied treatment or evaluation by an eye doctor for three weeks.  Pl's Compl. at ¶ 6.

Thus, Plaintiff argues that prison officials were deliberately indifferent to his medical needs in

violation of the Eighth Amendment[3].  The Court does not agree.

_____

        [3]In the instant matter, Defendant PHS was made a party to this action through a Third
Party Complaint filed by OCDOC and no direct claims were filed against PHS.  In light of this
Court's ruling that Plaintiff cannot properly maintain a claim against OCDOC, the third Party

It is well established that prisoners can assert Eighth Amendment claims pursuant to § 1983 alleging inadequate medical care.  See Helling v. McKinney, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").  However, "[f]ailure to provide medical care to a person in custody can rise to the level of a constitutional violation [of the Eighth Amendment] under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs."  Groman v. Township of Manalapan, 47 F.3d 628, 636-37 (3d Cir. 1995).  Essentially, the "deliberate indifference" standard is a two-prong test, requiring a demonstration that: (1) the prisoner's medical needs are serious; and (2) the defendants were deliberately indifferent to those needs.  Estelle v. Gamble, 429 U.S. 97 (1976); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  The Third Circuit has determined a "serious medical need" is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Lanzaro, 834 F.2d at 347 (quoting Pace v. Fauver, 478 F.Supp. 456, 458 (D.N.J. 1979)).  The Third Circuit has also established that when a delay in or denial of requested medical treatment causes an inmate to suffer a life long

---

Complaint is dismissed as well.  However, to the extent that Plaintiff sought to amend his Complaint in order to file § 1983 claims against PHS, this claim would be futile because a private corporation performing a municipal function may not be held vicariously liable under 42 U.S.C. § 1983.  In Natale, the court determined that PHS could not be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability; indeed, in order for PHS to be liable, the court held that Plaintiffs must produce evidence that there was a relevant PHS policy or custom, and that the policy caused the constitutional violation they allege. See Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  In the instant matter, there is no evidence that a PHS policy or custom caused Plaintiff's alleged constitutional violations. Thus, Plaintiff would not be able to  maintain a claim against PHS for constitutional violations pursuant to § 1983.

handicap or permanent loss, the medical need is serious.  Id. However, a misdiagnosis or mere disagreement with the form of treatment does not rise to the level of a constitutional violation. Estelle, 429 U.S. at 107.   Moreover, medical malpractice does not become an Eighth Amendment violation merely because the victim is a prisoner.  Id. at 106.  A plaintiff can establish that an official was deliberately indifferent to his medical condition in a variety of ways, including where an official "(1) kn[ew] of prisoner's need for medical treatment but intentionally refuse[d] to provide it; (2) delay[ed] necessary medical treatment based on a non-medical reason; (3) prevent[ed] a prisoner from receiving needed or recommended medical treatments."  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) (quoting Lanzaro, 834 F.2d at 346-47)).

Further, courts generally grant prison physicians significant latitude in determining the course of medical treatment as long as it is based on "sound professional judgment." Christy v. Robinson, 216 F.Supp. 2d 398, 413 (D.N.J. 2002) (citing Inmates of Allegheny Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)).  Thus, although a court will generally not find deliberate indifference where a plaintiff was provided with some form of medical care,[4] liability is not precluded where care was not based on sound medical judgment.  See Christy, 216 F.Supp. at 413.  Indeed, the Third Circuit has found a constitutional violation where the treatment pursued was based on non-medical reasons.  See White v. Napoleon, 879 F.2d 103, 109 (3d Cir. 1990). For example, in White, the Third Circuit found deliberate indifference where a doctor used certain medication and treatments for the purposes of intentionally inflicting pain on the prisoner.

---

[4]      See, e.g., Christy, 216 F.Supp. 2d at 418 (finding no deliberate indifference where defendants made a "consistent effort to provide the Plaintiff with medication and treatment to ease the pain and discomfort associated with his arthritis"); Clark v. Doe, 2000 WL 1522855, *2 (E.D.Pa. 2000) ("Courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

12

<u>Id</u>.

In the instant matter, Plaintiff contends that he was denied evaluation by an eye doctor for three weeks. Despite Plaintiff's allegations, the record reveals that Plaintiff received significant care for his injuries beginning directly after the attack. As noted above, on January 12, 2005, immediately following the attack, Plaintiff's injuries were treated by a nurse in the medical unit. Subsequently, on January 13, 2005, the day following the incident, Plaintiff saw a prison doctor who prescribed him eye drops for his eye injury. Thereafter, in the week following the incident, Plaintiff was treated two more times in the prison medical unit – once each by a nurse and doctor – for symptoms related to his injuries. Moreover, the record reveals that on January 22, 2005, Plaintiff requested an appointment with an eye specialist for his eye injury, and, that on February 2, 2005 and on March 9, 2005, Plaintiff saw Dr. Grossman, an opthamologist at the Ocean Eye Institute in Toms River, NJ regarding his eye injuries. Thus, despite Plaintiff's contention that he was denied adequate medical care, the record reveals that Plaintiff received significant care in the prison and by an eye specialist outside the prison. Indeed, although Plaintiff believes that he should have seen an eye doctor earlier during his course of treatment, as noted above, this complaint amounts to a mere disagreement with the course of medical treatment and, as such, does not rise to the level of a constitutional violation. Plaintiff has not established that prison officials refused to provide him treatment, that medical treatment was delayed for a non-medical reason or that he was prevented from receiving treatment. Thus, Plaintiff cannot establish that Defendants were deliberately indifferent to his medical needs and I hold that Defendants are entitled to summary judgment.

**IV. CONCLUSION**

For the reasons set forth above, Defendant's and Third Party Defendant's Motions for Summary

Judgment are GRANTED. An appropriate Order shall follow.

Date: August 23, 2006                              /s/ Freda L.Wolfson
                                                   United States District Judge

14